## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

EDITH RISSER,

Plaintiff,

v.

MASS GENERAL BRIGHAM, INC.,

Defendant.

Civil Action No.: 1:24-cv-13230

**COMPLAINT**

Plaintiff Edith Risser hereby brings her Complaint against Defendant Mass General Brigham ("MGB"), and alleges as follows:

### NATURE OF ACTION

1.      This is an action against Defendant for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States.  This Court also has jurisdiction under 28 U.S.C. § 2201 because the action seeks declaratory relief.

3.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4.      Plaintiff is a natural person residing at 70 Todd Pond Road, Lincoln, MA  01773-3808.

5.      On information and belief, Defendant is a Massachusetts corporation, with a principal place of business located at 800 Boylston Street, Suite 1150, Boston, MA  02199-1900. Defendant is a covered entity and employer as defined in 42 U.S.C. §§ 12111(2), 12111(5).

## EEOC CHARGE

6.      Plaintiff filed a timely charge, number 16C-2023-00058, with the United States Equal Employment Opportunity Commission ("EEOC") and a complaint in the Massachusetts Commission Against Discrimination (docket number 22BEM02435).

7.      The EEOC issued a right-to-sue notice on October 2, 2024.  Plaintiff files this lawsuit within ninety days of receipt of the EEOC right-to-sue notice and has satisfied all preconditions for filing this lawsuit.

## FACTS

8.      Plaintiff was an employee of Defendant from March 2004 through March 30, 2022, the date on which Defendant terminated Plaintiff.

9.      Plaintiff was employed in Defendant's Information Systems Department and had the title Applications Specialist in the Office of the Chief Information Officer at the time of her termination.

10.     Plaintiff's job did not require or involve contact with Defendant's patients.

11.     Plaintiff performed her job entirely from home, with no contact with any of Defendant's other employees, during the COVID-19 pandemic in the several months prior to her termination.

12.     In June 2021 Defendant announced that all of its employees were required to receive the COVID-19 vaccine.

13.     In compliance with Defendant's demand, Plaintiff received the COVID-19 primary vaccine on July 15, 2021.  Plaintiff received the Johnson & Johnson (Janssen) COVID-19 vaccine.

14.     Within a few days of receiving the COVID-19 vaccine, lesions developed on Plaintiff's lower extremities, accompanied by severe itching.  Over time, the lesions progressed and developed on Plaintiff's upper extremities and trunk.  The areas of severe itching accompanied the progression of the lesions.  The lesions and severe itching continue to this day.

15.     Plaintiff did not experience any of these symptoms before receiving the COVID-19 vaccine on July 15, 2021.

16.     Plaintiff sought care regarding her condition from her primary care physician and physicians specializing in dermatology.

17.     Plaintiff's physicians diagnosed Plaintiff's condition as guttate psoriasis.  This is Plaintiff's actual disability.

18.     Over several months Plaintiff's physicians prescribed multiple medications, including steroids, and treatments, including cryotherapy, phototherapy, and laser resurfacing, to address the condition.  These medications and treatments did not resolve the condition.

19.     In January 2022 Defendant announced that all of its employees were required to receive the COVID-19 vaccine booster by March 15, 2022.

20.     In view of her severe, adverse reaction to the COVID-19 vaccine and her ongoing unsuccessful treatment to address that reaction, Plaintiff sought a medical exemption to Defendant's requirement to receive the COVID-19 vaccine booster.  Plaintiff reasonably feared

that if she received the Defendant-mandated vaccine booster her condition (i.e., her disability) would worsen.

21.    Plaintiff obtained a written medical exemption from Defendant's requirement that she receive the vaccine booster.  Plaintiff's husband, a physician, prepared that exemption. Plaintiff provided that exemption to Defendant in February 2022.

22.    Defendant rejected Plaintiff's medical exemption on February 9, 2022.  Plaintiff unsuccessfully sought medical exemptions from other MGB physicians.  Those MGB physicians informed Plaintiff that she must first suffer anaphylaxis[1] before they would grant a medical exemption.

23.    Defendant terminated Plaintiff for her refusal to receive the vaccine booster, effective as of March 30, 2022, after Plaintiff took two weeks of unpaid administrative leave.

24.    Plaintiff unsuccessfully sought new employment after her termination.

25.    Guttate psoriasis is related to chronic psoriasis.  Psoriasis is an inflammatory disease, in which one's immune system overreacts for an unknown reason.

26.    Guttate psoriasis is a physiological disorder or condition.  It is a physical impairment that in Plaintiff's case manifests itself by symptoms including the appearance of lesions and severe itching.  These symptoms, caused by the underlying guttate psoriasis physiological disorder or condition, affect at least the integumentary system (skin) and the immune system, and cause cosmetic disfigurement in the form of the visible lesions.

27.    Plaintiff's guttate psoriasis—and the symptoms it causes—resulted from the COVID-19 vaccine that she received on July 15, 2021.  The adverse reactions (psoriasis/guttate

---

[1] Anaphylaxis is a severe, potentially life-threatening allergic reaction that causes the immune system to release a flood of chemicals that can cause shock; blood pressure drops suddenly and the airways narrow, blocking breathing.  The typical treatment is an injection of epinephrine. Failure to treat anaphylaxis immediately can be fatal.

psoriasis) to both the mRNA-based COVID-19 vaccines[2] and viral vector/adenovirus-based COVID-19 vaccines,[3] and the causal connection between those adverse reactions and those vaccines, are well-documented in the medical literature. *See, e.g.*, M. Lehmann et al., *New onset of mainly guttate psoriasis after COVID-19 vaccination: a case report*, 35 J. Eur. Acad. Dermatology & Venereology e752-55 (2021); C. Magro, *The histologic and molecular correlates of COVID-19 vaccine-induced changes in the skin*, 39 Clinics in Dermatology 966-84 (2021); Po-Chien Wu et al., *New Onset and Exacerbations of Psoriasis Following COVID-19 Vaccines: A Systematic Review*, 23 Am. J. Clinical Dermatology 775-99 (2022).

28.    The documented correlation between the COVID-19 vaccine and Plaintiff's guttate psoriasis supported her conclusion that her condition would worsen if she received the Defendant-mandated vaccine booster.[4]  Furthermore, there was a documented lack of efficacy of the COVID-19 vaccine booster against the COVID-19 variant present in early 2022 when Defendant mandated that booster.[5]  This demonstrates that the risk to Plaintiff resulting from her receiving that booster was significantly greater than any purported benefit.

29.    Plaintiff's actual disability (the underlying guttate psoriasis physiological disorder or condition) and the potential of it worsening following receipt of the COVID-19 vaccine

---

[2] *E.g.*, Vaccines manufactured by Pfizer-BioNTech or Moderna.

[3] *E.g.*, Vaccines manufactured by Johnson & Johnson (Janssen), AstraZeneca (Oxford-AstraZeneca), or Novavax.

[4] At least one scientific paper describes the worsening of psoriasis following receipt of an mRNA-based COVID-19 vaccine booster; *see* Crystal Zhen Yu Phuan et al., *Temporary exacerbation of pre-existing psoriasis and eczema in the context of COVID-19 messenger RNA booster vaccination: A case report and review of the literature*, 6 J. Am. Acad. Dermatology 94-96 (2022).  Plaintiff's disability caused by her receipt of a non-mRNA-based COVID-19 vaccine, as backed by the medical literature, supported her conclusion that her receiving even a non-mRNA-based COVID-19 vaccine booster would exacerbate her disability.

[5] *See, e.g.*, Dr. Luc Montagnier & Jed Rubenfeld, *Omicron Makes Biden's Vaccine Mandate Obsolete*, Wall St. J., Jan. 10, 2022.

---

booster (e.g., as described in the medical literature), were contraindications for the COVID-19 vaccine booster.

30.     The symptoms due to the underlying guttate psoriasis physiological disorder or condition affecting Plaintiff implicate, and substantially negatively affect, several of her major life activities.

31.     When experiencing the symptoms due to the underlying guttate psoriasis physiological disorder or condition, Plaintiff is unable to think and concentrate for extended periods.  This impairment is particularly severe during a flare-up of the guttate psoriasis.

32.     When experiencing the symptoms due to the underlying guttate psoriasis physiological disorder or condition, Plaintiff's is unable to sleep due to the associated discomfort, including the discomfort from the severe itching.  This impairment is particularly severe during a flare-up of the guttate psoriasis.

33.     When experiencing the symptoms due to the underlying guttate psoriasis physiological disorder or condition, Plaintiff has difficulty walking for extended periods due to the associated discomfort, including the discomfort from lesions present on Plaintiff's feet.  This impairment is particularly severe during a flare-up of the guttate psoriasis.

34.     Even while suffering from the disability and symptoms described, Plaintiff continued to carry out her job satisfactorily and did not receive any complaints regarding her job performance.  During this time Plaintiff worked remotely and had no contact with Defendant's staff or patients.  Plaintiff continued to perform the essential functions of her job—notwithstanding her ongoing disability and symptoms—up until the point when Defendant terminated her.

35.     Defendant was aware of Plaintiff's disability, at least because of her treatment by Defendant's medical staff and her request for a medical exemption to Defendant's requirement to receive the COVID-19 vaccine booster.

36.     Plaintiff sought an exemption from Defendant's COVID-19 vaccine booster requirement as a reasonable accommodation for her disability.

37.     The reasonable accommodation is linked to Plaintiff's disability at least because of the documented adverse reactions to the COVID-19 primary and booster vaccines resulting in the onset or worsening of that disability.

38.     Plaintiff continues to suffer from her disability.

39.     Plaintiff's currently prescribed protocol to address her disability includes daily use of multiple medications (steroids) and twice-weekly phototherapy and laser resurfacing sessions.  This protocol has not resolved her disability.  Plaintiff occasionally experiences flare-ups of the disability accompanied by more intense symptoms, including the appearance of new lesions.

40.     Plaintiff's currently prescribed protocol has a significant impact of Plaintiff's day-to-day life.  For example, Plaintiff must reschedule her normal activities around the required twice-weekly phototherapy and laser resurfacing sessions.

41.     Plaintiff is concerned that the currently prescribed protocol might have deleterious long term effects that her physicians described.  Those effects include skin cancer (non-melanoma), telangiectasia, hypopigmentation, skin atrophy, and striae.

42.     Plaintiff is concerned that her disability might reduce her life expectancy.[6]

43.     Plaintiff has experienced emotional distress and embarrassment due to the cosmetic disfigurement caused by the lesions.

## COUNT I

## Violation of 42 U.S.C. § 12112

44.     Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-43.

45.     In the absence of an undue hardship, Defendant had a duty to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is … an employee."  42 U.S.C. § 12112(b)(5)(A); *see also Murray v. Warren Pumps, LLC*, 821 F.3d 77, 84 (1st Cir. 2016).

46.     Defendant failed to provide any reasonable accommodation on Plaintiff's request.

47.     Defendant did not assert that providing Plaintiff with a reasonable accommodation would impose an undue hardship on itself.

48.     Defendant's acts and omissions have caused Plaintiff harm.

## PRAYER FOR RELIEF

A.      WHEREFORE, Plaintiff prays for relief as follows:

B.      Declaring that Defendant is in violation of 42 U.S.C. § 12112 for discriminating against Plaintiff on the basis of her disability.

---

[6] *See, e.g.*, Joan Grossman & Dr. Ariel D. Teitel, *Does Psoriasis Affect Life Expectancy?* (July 31, 2023), https://www.mypsoriasisteam.com/resources/does-psoriasis-affect-life-expectancy#:~:text=Psoriasis%20is%20not%20a%20fatal,shorter%20than%20people%20without%20psoriasis ("People with moderate to severe psoriasis have a life expectancy that is, on average, five years shorter than people without psoriasis.")

C.    Ordering that Defendant compensate Plaintiff for her damages, including her lost wages and benefits for the period from March 30, 2022 to the present.

D.    Ordering Defendant to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 12205; and

E.    Granting Plaintiff such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: December 31, 2024            /s/Brian M. Gaff
                                                      Brian M. Gaff (BBO No. 642297)
                                                      215 South Broadway, Suite 308
                                                      Salem, NH  03079-3374
                                                      857-719-0100
                                                      781-581-9134 (fax)
                                                      bgaff@lawbmg.com

                                                      *Attorney for Edith Risser.*